IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAUL J. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 07-476-GMS |
| | ) |
| CARL C. DANBERG, THOMAS | ) |
| CARROLL, and BETTY BURRIS, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

## I. INTRODUCTION

The plaintiff Paul J. Smith ("Smith"), a former inmate within the Delaware Department

of Correction ("DOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging unconstitutional

conditions of confinement and failure to treat a medical condition. He appears *pro se* and was

granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 4, 28.)

Now before the court is the motion for summary judgment of the defendants Carl C. Danberg

("Danberg"), Thomas Carroll ("Carroll"), and Betty Burris ("Burris"), and Smith's cross motion

for summary judgment. (D.I. 40, 42.) Also pending are two motions to amend the complaint.

(D.I. 36, 37.) For the reasons that follow, the court will grant the State defendants' motion for

summary judgment, will deny Smith's motion for summary judgment, and will deny Smith's

motions to amend.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Smith filed his complaint when he was housed at the Delaware Correctional Center

("DCC"), now known as the James T. Vaughn Correctional Center. The complaint was signed

by Smith on July 20, 2007, and the court considers it filed as of that date.[1] (D.I. 2.) The State

defendants advise that Smith was released from incarceration on November 10, 2007.[2] (D.I. 41.)

The complaint contains three issues. First, that on May 29, 2007, the DCC refused to

spray for insects and spiders, that on June 27, 2007, Smith was bitten by a spider, and that as of

the date the complaint was filed he had not received medical treatment for the bite. (D.I. 2, IV

Statement of Claim; Pl's. Aff.) Smith alleges that as of July 6, 2007, insects continued to bite

him. (*Id.*) Second, that Smith is handicapped, disabled, has bad hips, and lumbar problems but,

nonetheless, was assigned to a top bunk with no ladder or bed rails to protect him from falling.

(*Id.*) He fell from the top bunk on June 17, 2007. (*Id.*) And, third, his housing unit is moldy,

dusty, and dirty and affects his asthmatic condition. (*Id.*)

The defendants move for summary judgment under five theories: Smith failed to

establish the deprivation of an Eighth Amendment right; Smith failed to exhaust his

administrative remedies as required by 42 U.S.C. § 1997e(a); Smith failed to establish personal

involvement by the named defendants; the defendants are entitled to qualified immunity; claims

---

[1] The computation of time for complaints filed by *pro se* inmates is determined according to the "mailbox rule." In *Houston v. Lack*, 487 U.S. 266 (1988), the United States Supreme Court held that a prisoner's notice of appeal of a habeas corpus petition was deemed filed as of the date it was delivered to prison officials for mailing to the court. While *Houston* dealt specifically with the filing of a habeas appeal, the decision has been extended by the Court of Appeals for the Third Circuit to other prisoner filings. *See Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998). Additionally, this district has extended the *Houston* mailbox rule to pro se § 1983 complaints. *Gibbs v. Decker*, 234 F. Supp. 2d 458, 463 (D. Del. 2002). After filing his complaint Smith submitted numerous affidavits to support his claims. Many of the affidavits refer to acts occurring after the July 20, 2007 filing date and, therefore, will not be considered by the court.

[2] Smith submitted his change of address to the court, dated November 7, 2007; mailed from the DCC on November 10, 2007. (D.I. 17.)

against the defendants in their official capacities are barred by the Eleventh Amendment; and any
claim for injunctive relief is moot by reason of Smith's release from prison. Smith's cross
motion for summary judgment states that he has evidence to support to his position and is
entitled to summary judgment; the defendants were aware of his complaints but did nothing; he
used all his administrative remedies before filing in federal court; his letters grievances and
complaints were sufficient to impute knowledge to the defendants; and he received inadequate
medical care while housed at the DCC. Before discussing the pending motions, the court
observes that the State defendants only address the insect/spider conditions of confinement and
corresponding medical treatment issues, but fail to address the top bunk issue and dust, mold,
and dirt issues.[3] (*See* D.I. 41, ¶ 2.) Similarly, Smith also failed to discuss the top bunk and dust,

___

[3]Following are the facts contained in the record for the two issues the State defendants
failed to address. With regard to the top bunk issue, Smith submitted a grievance on June 18,
2007, after he fell off the top bunk, and asked to see a physician to obtain a memo for a bottom
bunk assignment. (D.I. 38.) On July 3, 2007, the grievance was sent to the medical unit for
investigation. (*Id.*) Smith submitted a second grievance regarding the top bunk issue on June 19,
2007, and asked to be discharged from prison. (D.I. 7.) On June 25, 2007, the grievance was
returned as unprocessed since the issue is considered non-grievable as a classification action.
(*Id.*) Smith submitted another grievance on June 26, 2007, complaining that a corrections officer
refused to place him in a bottom bunk even after he received a memo from medical on June 22,
2007 regarding the bottom bunk. (*Id.*) The grievance was returned as unprocessed on July 20,
2007, with the notation "medical is not authorized to order an I/M be moved." (*Id.*) Smith's
affidavit states that in June 2007 a physician ordered a memo for a bottom bunk, but as of August
10, 2007, he had yet to be assigned to one. (D.I. 6, Pl.'s Aff.)

    With regard to dirty, moldy prison conditions, Smith submitted a grievance regarding the
dusty prison conditions on June 20, 2007. (D.I. 7.) The grievance states that, on June 15, 2007,
Smith complained to Danberg, Carrol, and deputy warden Pierce ("Pierce"). (*Id.*) Smith, who
suffers from asthma, requested relocation to a new facility because the conditions affected his
health. (*Id.*) On July 10, 2007, the grievance was returned as unprocessed because, as a
classification action, the issue is considered non-grievable. (*Id.*) Smith submitted a second
grievance on June 25, 2007, complaining that the mold, fungus, and dirt adversely affected his
health. (*Id.*) Smith asked to be discharged from prison until the completion of maintenance at
the DCC. (*Id.*) The grievance was returned as unprocessed for the same reasons as the June 15,
2007 grievance. (*Id.*) Smith submitted a third grievance, also on June 25, 2007, again

mold and dirt issues in his motion for summary judgment.

Smith submitted several grievances on the spider and insect issue. He submitted a grievance on May 29, 2007, asking for treatment as a result of a spider bite.[4] (D.I. 41, ex. B.) The grievance was sent to the medical unit on July 6, 2007. (*Id.*) The grievance advanced to level II and a hearing date was set for November 8, 2007, but Smith failed to appear. (*Id.*) As a result, the grievance was considered withdrawn. (*Id.*) Smith submitted a grievance dated July 1, 2007, complaining of the poor prison conditions including spiders hanging from the ceilings, as well as dirty, dusty, and moldy prison conditions, that he considered hazardous to his health due to his asthmatic condition. (D.I. 7.) The grievances states that Danberg, Carroll, and Burris all witnessed the poor conditions. (*Id.*) Smith asked to be moved to a new location due to his asthmatic condition. (*Id.*) The grievance was returned as unprocessed on July 17, 2007, with the

_____

complaining that the moldy prison conditions caused safety issues because of his asthma. (*Id.*) Smith sent Danberg and Burris copies of the grievance. Once again, he asked to be discharged from prison. (*Id.*) The third grievance referred to an incident date of May 23, 2007, and the grievance was returned unprocessed on July 23, 2007, on the grounds that it was filed after the expiration of the filing period. (*Id.*) Next, on June 27, 2007, Smith wrote to Carroll complaining of the mold, fungus, and dirt at the prison. (*Id.*) He wrote a letter to Pierce the next day with similar complaints. (*Id.*) As will be discussed in the body of this Memorandum, Smith submitted additional prison conditions grievance on July 1, 2007 and July 6, all returned as nongrievable. (*Id.*)

On July 3, 2007, Burris responded to one of Smith's June 25, 2007 grievances and advised him that it had been forwarded to Capt. McCreanor for processing. (D.I. 7.) On August 13, 2007, Pierce corresponded with Smith and advised him that his July 9, 2007 letter regarding building issues was forwarded for investigation and action. (D.I. 39.) On July 29, 2007, Lt. Harvey ("Harvey") met with Smith and asked him to show him the conditions of which he complained. (*Id.*) According to Smith, Harvey was shown the inside shower conditions of fungus, mold, broken tiles, and peeling paint, as well as the bathroom heater vent filled with dust. (*Id.*) Harvey told Smith there was not much the prison could do about the conditions. (*Id.*)

[4]Contained in the record are two dates when Smith received the spider bite. Smith alleges he was bitten on June 27, 2007, but his grievance provides an incident date of May 29, 2007.

notation, "housing conditions and medical staff actions are separate issues." (*Id.*) On July 6, 2007, Smith submitted a similar grievance, again returned as unprocessed on July 26, 2007, with the notation, "IGC does not contact outside agencies for inmates. (*Id.*) You can write them if you choose." (*Id.*) Smith had asked that the Department of Natural Resources and Environmental Control be contacted regarding the prison conditions. (*Id.*)

On July 7, 2007, Smith complained, in writing, to Pierce and attached an affidavit to his letter regarding the prison conditions of spiders and spider webs hanging from the ceiling. (D.I. 39.) On July 27, 2007, Burris corresponded with Smith and advised him that his July 7, 2007 letter was forwarded to the Health Service Administrator for follow-up with his medical issues. (D.I. 12.)

Terry Yoder ("Yoder"), correctional physical plant maintenance superintendent at the DCC, states that preventive maintenance work orders are generated through the Delaware automated correction system ("DACS") database. (D.I. 41, ex. A.) The DACS system includes a preventive maintenance section and a regular routine work order section. (*Id.*) Work orders are submitted and entered into the DACS system on a daily basis and then reviewed for approval or denial. (*Id.*) The approved work orders are forwarded to maintenance for completion. (*Id.*)

A state-contracted pest control company inspects and performs preventive maintenance for pest and vermin control on a regular basis. (*Id.*) Aside from the kitchen and commissary areas, most of the other buildings are inspected once per month and the remaining are inspected by request only. (*Id.*) The customary DACS procedure is followed if insects are seen between the contracted inspections and a maintenance staff officer accompanies the inspector to the specific area where the insects were seen. (*Id.*)

-5-

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005). Thus, summary judgment is appropriate only if the party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit. *Id.* at 247-48. An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* at 249. The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the evidence is to be viewed in the light most favorable to the nonmoving party, with all doubts resolved against entry of summary judgment. *Blackburn v. United Parcel Serv. Inc.*, 179 F.3d 81, 91 (3d Cir. 1999).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

## IV. DISCUSSION

### A. Exhaustion

The record reflects that Smith filed several grievances regarding the insect/spider issue. One grievance concerns his spider bite and need for medical treatment. The other grievances concern the prison conditions with mention of spiders and insects in the prison. The State defendants move for summary judgment on this issue arguing that Smith did not exhaust his administrative remedies. They make particular reference to a grievance Smith filed complaining that he had been bitten by a spider and requested medical treatment for the bite. They make no reference to the other grievances discussed above. Smith argues that he exhausted his administrative remedies.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Failure to exhaust administrative remedies must be pled and proved by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including

-7-

deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The PLRA does not require the grievance and complaint to be identical because inmates are required to complete the applicable administrative process (such as a grievance procedure) even when seeking a form of relief that the prison cannot provide, so long as the prison can afford some sort of relief. *See Booth v. Churner*, 532 U.S. 731 (2001).

"'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." *Williams v. Beard,* 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill v. Gillis,* 372 F.3d 218, 231 (3d Cir. 2004)). Third Circuit case law makes clear that a prisoner must complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA. *Nickens v. Department of Corr.*, 277 F. App'x 148, 152 (3d Cir. 2008) (not reported) (citing *Williams*, 482 F.3d at 639; *Spruill,* 372 F.3d at 228, 231.)

DOC administrative procedures provide for a multi-tiered grievance and appeal process. DOC Policy 4.4 (revised May 15, 1998). First, the prisoner must file a grievance within seven days with the Inmate Grievance Chair, for an attempt at informal resolution; second, if unresolved, the grievance is forwarded to the Grievance Resolution Committee for a determination, which is forwarded in turn to the Warden; and third, the Bureau Grievance Officer conducts the final level of review. *Id.* When medical grievances are submitted, they are first forwarded to the medical services staff who attempt an informal resolution of the matter. If this fails, the grievance goes to the Medical Grievance Committee, which conducts a hearing. If the matter is still not resolved, the inmate may once again appeal. DOC Policy 4.4 (revised May 15, 1998).

-8-

It is clear from the record that Smith did not exhaust his claim regarding the spider bite/medical needs issue. Smith failed to appear for his November 8, 2007 hearing and the grievance was considered withdrawn. Smith's failure to properly exhaust this issue is fatal. "[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Conversely, Smith had no remedy as to the insect/spider conditions grievances he submitted. Inasmuch as both were returned as unprocessed, he could proceed no further with the exhaustion process.

Accordingly, the court will grant the State defendants' motion for summary judgment only as to the spider bite/medical needs issue. The insect/spider conditions of confinement issue is addressed below.

### B. Personal Involvement

With regard to the insect/spider conditions of confinement issue, the State defendants argue that Smith fails to allege the requisite personal involvement of the named defendants. Smith argues that on May 29, 2007, the DCC refused to spray for insects and spiders and he was later bitten. (D.I. 43.) Smith further argues that he informed environmental, filed grievances, and contacted Danberg, Carroll, and Burris about the prison conditions. (*Id.*)

While Smith argues that the DCC refused to spray for insects, there is nothing in the record indicating a request was made to any of the named defendants. The only mention of the defendants Danberg and Carroll occurs once, in Smith's July 1, 2007 grievance, wherein he states that Danberg, Carroll, and Burris witnessed spiders hanging from the prison ceiling. The grievance does not state when or where the defendants made their alleged observations. Burris is mentioned a second time in an exhibit wherein she acknowledged receipt of letter from Smith to

Pierce and advised Smith the letter was being forwarded to Health Services for medical follow-up. The State defendants provided information regarding the procedures used by the DCC when dealing with insects and spiders at the prison.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003)(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). As is well established, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiffs' constitutional rights. *Id.; see Monell v. Department of Social Services* 436 U.S. 658, 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. *Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d. Cir. 2005) (not reported).

Notably, the DCC has implemented policies to remedy any insect/spider problems. Moreover, there is nothing in the record to support a finding that the defendants had knowledge of an insect/spider problem, were aware of Smith's complaints, and remained "deliberately

indifferent" to his plight. *Sample v. Diecks*, 885 F.2d at 1118. At most, the defendants observed spiders and/or spider webs hanging from the ceiling. Additionally, when Burris received Smith's letter to Pierce, it was after the time he had been bitten, and she took action by forwarding Smith's complaints to the Health Services Administrator. After reviewing the record, the court finds there is insufficient evidence to enable a jury to reasonably find for Smith on the issue of whether the defendants had any personal involvement in the alleged insect/spider conditions of confinement constitutional violations. Therefore, the court will grant the State defendants' motion for summary judgment and will deny Smith's motion for summary judgment on this issue.

## C. Eleventh Amendment Immunity

The defendants seek summary judgment on the claims raised against them in their official capacities. The Eleventh Amendment bars suits against states. *See Bolden v. SEPTA*, 953 F.2d 807, 813 (3d Cir. 1991). The State has not waived its immunity from suit in federal court, and although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007) (not reported) (citations omitted). Additionally, claims made against state officials in their official capacities are treated as claims made against the state itself. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989). For the above reasons, the court will grant the defendants' motion for summary judgment on this issue and will deny Smith's motion for summary judgment on this issue.

## D. Injunctive Relief

The defendants move for summary judgment as to any claim for injunctive or declaratory

relief on the grounds that said claims are moot as a result of Smith's release from prison.

Smith's prayer for relief asks the court to take action against the Bureau of Prisons and to contact

the Department of Natural Resources and Environmental Control.

The availability of injunctive relief depends on whether there is a live dispute between the

parties. *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir.

2003). Absent a showing of continuing adverse effects, an inmate's request for injunctive relief

no longer presents an actual controversy after the inmate is transferred to another institution.

*Winsett v. McGinnes*, 617 F.2d 996, 1004 (3d Cir. 1980). Obviously then, there is no longer an

actual controversy once the inmate is release from prison. Therefore, the court will grant the

defendants' motion for summary judgment on this issue and will deny Smith's motion for

summary judgment on this issue.

## V. MOTIONS TO AMEND

Smith filed two motions to amend on May 5, 2008, apparently to comply with the court's

scheduling order. (D.I. 32, 36, 37.) The court set a May 19, 2008 deadline for joinder of other

parties and amendment of pleadings. (*Id.*) The filings repeat Smith's request for monetary

damages, reiterate his Eighth Amendment claims, and espouses legal theories.

The proposed amendments are frivolous and fail to state a claim upon which relief may

be granted and, therefore, the motions to amend will be denied. *See In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Harrison Beverage Co. v. Dribeck*

*Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).

## VI. CONCLUSION

For the above stated reasons the court will grant the State defendants' motion for

summary judgment and will deny Smith's motion for summary judgment. The conditions of confinement issues regarding the upper bunk assignment, mold, dust, and dirt are the remaining claims. The court will deny Smith's motions to amend. An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

March 16, 2009
Wilmington, Delaware

-13-

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PAUL J. SMITH,                              )
                                            )
            Plaintiff,                      )
                                            )
        v.                                  )  Civ. Action No. 07-476-GMS
                                            )
CARL C. DANBERG, THOMAS                     )
CARROLL, and BETTY BURRIS,                  )
                                            )
            Defendants.                     )

**ORDER**

At Wilmington this 16th day of _____, 2009, for the reasons set forth in

the Memorandum issued this date;

1. The plaintiff's motions to amend are **denied**. (D.I. 36, 37.)

2. State defendants motion for summary judgment is **granted**. (D. I. 40.)

3. The plaintiff's motion for summary judgment is **denied**. (D.I. 42.)

4. The remaining claims are the conditions of confinement upper bunk issue and the

mold, dirt, dust issue.

CHIEF, UNITED STATES DISTRICT JUDGE