IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAUL J. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 07-476-GMS |
| | ) |
| CARL C. DANBERG, THOMAS | ) |
| CARROLL, and BETTY BURRIS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff, Paul J. Smith ("Smith"), a former inmate within the Delaware Department of Correction ("DOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 4, 28.) Pending are the parties' cross-motions for summary judgment. (D.I. 49, 53.) For the reasons that follow, the court will grant the motion for summary judgment of the defendants Carl C. Danberg ("Danberg"), Thomas Carroll ("Carroll"), and Betty Burris ("Burris") (collectively "the defendants") and will deny Smith's motion for summary judgment.

### II. PROCEDURAL AND FACTUAL BACKGROUND

Smith filed his complaint when he was housed at the Delaware Correctional Center, now known as the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware. He was

---

[1] The complaint was signed by Smith on July 20, 2007, and the court considers it filed as of that date. (D.I. 2.) The computation of time for complaints filed by *pro se* inmates is determined according to the "mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988); *Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998); *Gibbs v. Decker*, 234 F. Supp. 2d 458, 463 (D. Del. 2002). After filing his complaint Smith submitted numerous affidavits to support his claims. Many of the affidavits refer to acts occurring after the July 20, 2007 filing date and, therefore, are not considered by the court.

released from incarceration in November 2007. (D.I. 17, 41.) Two issues remain in the case, the court having granted the defendants summary judgment on the issue of a spider bite and subsequent medical treatment.[2] (D.I. 45.) The two remaining claims as alleged are that: (1) Smith is handicapped, disabled, has bad hips, and lumbar problems, was assigned to a top bunk with no ladder or bed rails to protect him from falling, and fell from the top bunk on June 17, 2007; and (2) the housing unit to which Smith was assigned was moldy, dusty, and dirty and affected his asthmatic condition. (D.I. 2, IV Statement of Claim, Pl.'s Aff.; D.I. 39.)

**Top/Bottom Bunk Assignment.** David Pierce ("Pierce"), the deputy warden at the VCC, is responsible for overall security.[3] An inmate who seeks a bottom bunk assignment must: (1) submit a sick call slip to medical; (2) undergo an examination by a physician; (3) receive approval by a physician who submits a form for a bottom bunk assignment to the deputy warden's office for review; and (4) receive approval from the deputy warden following his review.[4] (D.I. 50, ex. B.)

Smith submitted grievance No. 125083 on June 18, 2007 after he fell from the top bunk and asked to see a physician to obtain a memo for a bottom bunk assignment. (D.I. 38.) On July 3, 2007, the grievance was sent to the medical unit for investigation. (*Id.*) On June 19, 2007, Smith submitted grievance No. 123143 regarding the top bunk issue and asked to be discharged from prison. (D.I. 7.) On June 25, 2007, grievance No. 123143 was returned as unprocessed

---

[2]On March 17, 2009, the court extended the discovery deadline to April 20, 2009, and the summary judgment motion deadline to June 22, 2009. (D.I. 46.)

[3]Pierce is not a party to this case.

[4]The deputy warden may return the request to medical for further clarification to insure the inmate's medical claim justifies the need for a bottom bunk. (D.I. 50, ex. B. ¶ 3.)

because the issue was considered non-grievable as a classification action. (*Id.*) In the meantime, on June 22, 2007, Pierce had received a request from a physician to assign Smith to a bottom bunk. Pierce approved the requested on June 25, 2007, and informed the medical director and Institutional Transfer Officer to facilitate the movement. (D.I. 50, ex. B.)

Smith submitted grievance No. 130827 on June 26, 2007 complaining that "Sgt. Billy" (presumably Sgt. Bailey") refused to place him in a bottom bunk even though he received a memo from medical on June 22, 2007 regarding a bottom bunk assignment. (D.I. 7.) Sgt. Bailey was assigned to Smith's housing unit, but he did not have access to the list of inmates approved for bottom bunks and he had no authority over inmate moves. (D.I. 50, ex. B.) The grievance was returned as unprocessed on July 20, 2007, with the notation "medical is not authorized to order an I/M be moved." (*Id.*)

On July 28, 2007, Smith submitted grievance No.134526 complaining that he had slipped and injured himself while climbing onto the top bunk. (D.I. 7, D.I. 50 ex. C.) He sought medical attention and requested reassignment to a bottom bunk as soon as possible. (*Id.*) The grievance was forwarded to medical for review, but according to Pierce, by the time the medical provider reviewed the grievance, Smith was no longer in the system. (D.I. 50, ex. B.) The medical grievance form states that "bed assignment is not a medical issue. Request for treatment is the only issue to be addressed." (D.I. 50, ex. C.) The same day, Smith submitted a request for medical care for injuries incurred as a result from climbing to the top bunk. (D.I. 50, ex. D.) He also sought medical attention on for the injuries July 31, 2007 and August 6, 2007.

As of August 10, 2007, Smith he not been assigned to a bottom bunk, despite the physician's order memo and approval for a bottom bunk. (D.I. 6, Pl.'s Aff.) That day Smith

wrote to Danberg and complained of "pain and suffering." (D.I. 6.) The letter included several affidavits. Danberg forwarded the letter to the medical director to handle. (D.I. 12.) According to DOC records, Smith was ultimately assigned a bottom bunk on October 10, 2007.[5] (D.I. 50, ex. B.)

**Prison Conditions**. During his incarceration at the VCC, Smith was housed in an older building whose bathrooms had ceramic tiles. Due to the large number of inmates in the building, its three showers run ten hours a day. The constant shower use provides little time for the showers to dry out to prevent mold growth. The bathrooms are cleaned during each shift. (D.I. 54, ex. A.)

Smith submitted grievance No. 127544 regarding prison conditions on June 20, 2007. (D.I. 7.) It states that on June 15, 2007, he complained to Danberg, Carrol, and Pierce about dusty, moldy, and dirty conditions. (*Id.*) Smith, who suffers from asthma, requested relocation to a new facility because the conditions affected his health. (*Id.*) The grievance was returned as unprocessed on July 10, 2007 because classification issues are considered non-grievable. (*Id.*)

On June 25, 2007, Smith submitted a grievance complaining that the mold, fungus, and dirt adversely affected his health. (D.I. 7.) Smith asked to be discharged from prison until the completion of maintenance at the VCC. (*Id.*) The grievance was returned as unprocessed for the same reasons as the June 15, 2007 grievance. (*Id.*).

Smith submitted grievance No. 131020 on June 25, 2007 complaining that the moldy prison conditions caused safety issues because of his asthma. (*Id.*) Smith sent Danberg and

---

[5]The record contains several other medical grievances, but they do not seek a reassignment to a bottom bunk.

Burris copies of the grievance. Burris forwarded Smith's grievance for processing. (*Id.*) Also, on July 3, 2007, Burris responded to one of Smith's June 25, 2007 grievances and advised him that it had been forwarded to Capt. McCreanor for processing. (D.I. 7.) Grievance No. 131030 again sought a discharge from prison. (*Id.*) It referred to an incident date of May 23, 2007, and was returned unprocessed on July 23, 2007, as filed after the expiration of the filing period. (*Id.*)

Next, on June 27, 2007, Smith wrote to Carroll complaining of the mold, fungus, and dirt at the prison. (*Id.*) He wrote a letter to Pierce the next day with similar complaints, and on July 7, 2007, wherein he indicated that his complaints were being ignored by the administration. (D.I. 7, D.I. 39.) Smith sought medical attention for mental stress and depression the same day, and states that the unsanitary conditions caused his ailments. (D.I. 50, ex. D.)

Smith submitted grievance No. 129183 dated July 1, 2007 complaining of dirty, dusty, and moldy prison conditions that he considered hazardous to his health due to his asthmatic condition, noting that Danberg, Carroll, and Burris witnessed the poor conditions. (D.I. 7.) Smith asked to be moved to a new location due to his asthmatic condition. (*Id.*) The grievance was returned as unprocessed on July 17, 2007, with the notation, "housing conditions and medical staff actions are separate issues." (*Id.*)

On July 6, 2007, Smith submitted grievance No. 130828 but it was returned as unprocessed on July 26, 2007, with the notation, "IGC does not contact outside agencies for inmates. (*Id.*) You can write them if you choose." (*Id.*) Smith had asked that the Department of Natural Resources and Environmental Control be contacted regarding the prison conditions. (*Id.*) Grievance No. 132146 submitted on July 6, 2007, complained of broken tiles in the showers and bathroom floors, chipping paint, dirt, and dust. (D.I. 50, ex. E9.) The grievance was returned as

non-grievable for the same reasons as grievance No. 130828. (*Id.*) Smith's affidavit dated July 6, 2007, avers that as of May 28, 2007, the building in his compound had mold on the ceilings and surfaces, a growth of fungus, and lead paint. (D.I. 39.)

On August 13, 2007, Pierce corresponded with Smith and advised him that his July 9, 2007 and August 7, 2007 letters regarding building issues were forwarded for investigation and action.[6] (D.I. 39.) On July 29, 2007, Lt. Harvey ("Harvey") met with Smith and asked him to show him the conditions of which he complained. (*Id.*) According to Smith, Harvey was shown the inside shower conditions of fungus, mold, broken tiles, and peeling paint, as well as the bathroom heater vent filled with dust. (*Id.*) Harvey told Smith there was not much the prison could do about the conditions. (*Id.*)

Ron Pawlowski is the Facility Inspector at the VCC. His position requires the inspection of all buildings at the VCC. When deficiencies are observed, they are documented, reports are prepared, and work orders are submitted to maintenance. Each tier has an inmate tierman whose duties include keeping the tier, bathrooms, and latrines clean. An inmate environmental crew, supervised by a building officer, removes trash, mops floors, and wipes down walls and windows on the tiers and in the bathroom. Disinfectants are used for cleaning. (D.I. 54, ex. A.)

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005).

---

[6]On October 12, 2007, Pierce forwarded later complaints for investigation and action.

Thus, summary judgment is appropriate only if the party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit. *Id.* at 247-48. An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* at 249. The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the evidence is to be viewed in the light most favorable to the nonmoving party, with all doubts resolved against entry of summary judgment. *Blackburn v. United Parcel Serv. Inc.*, 179 F.3d 81, 91 (3d Cir. 1999).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

The summary judgment standard is not affected when the parties file cross-motions for summary judgment. *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). Such motions "'are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001) (quoting *Rains v.*

*Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). If after review of cross-motions for summary judgment the record reveals no genuine issues of material fact, then judgment will be entered in favor of the deserving party in light of the law and undisputed facts. *Iberia Foods Corp. v. Romeo,* 150 F.3d 298, 302 (3d Cir. 1998).

The defendants move for summary judgment on the grounds that: (1) Smith failed to establish the deprivation of an Eighth Amendment right as they had no personal involvement and were not deliberately indifferent; (2) Smith failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a); and (3) they are entitled to qualified immunity for the claims against them in their individual capacities and to Eleventh Amendment immunity for the claims against them in their official capacities.[7] Smith moves for summary judgment on the grounds that there is evidence that: (1) the defendants acted with deliberate indifference; (2) they had personal involvement in the alleged acts; (3) he exhausted his administrative remedies; and (4) it is unclear if he seeks to hold the defendants in their official or individual capacities.

## IV. DISCUSSION

The defendants argue that Smith cannot establish a claim for liability because they have no personal involvement in the allegations in the complaint. They also argue there is no evidence of deliberate indifference. Smith counters that the defendants were personally involved in the alleged wrongs and he can prove they played an affirmative role in the deprivation of his rights. He contends that he "made contacts" with Danberg, Carroll, and Burris and "received a disregarding within these contacts." (D.I. 54.) Smith argues that he clarified his position during

---

[7]The issue of Eleventh Amendment immunity is moot inasmuch as the court previously granted the defendants summary judgment on the issue. (D.I. 45.)

discovery and "court documents clarify each defendants[' knowledge], by writing, copies of multiple letters, and affidavits submitted to prison officials along with various responses," but he does not direct the court to the filings upon which he relies. (*Id.*)

"A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

It is well established that supervisory liability cannot be imposed under § 1983 on a respondeat superior theory.[8] *See Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937 (2009); *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 69 n.14 (3d Cir. 1993). Purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her superintendent responsibilities.[9] *Iqbal*, 129 S.Ct. at 1949. "Absent vicarious liability, each

---

[8] In *Iqbal*, the plaintiff alleged supervisory officials violated his rights because one official was the "principal architect" of the policy, and another was "implemental" in adoption and execution of the policy. *See id.* at 1944. The Supreme Court found the allegations facially insufficient. *See Iqbal*, 129 S.Ct. at 1949 (quoting *Robertson v. Sichel*, 127 U.S. 507, 515-516 (1888), for the proposition that "[a] public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").

[9] In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official. *See Bayer v. Monroe County Children and Youth Services*, 577 F.3d 186, 190 n.5 (3d Cir. 2009).

Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* Instead, a plaintiff must show that an official's conduct caused the deprivation of a federally protected right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Additionally, the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement, *Rode*, 845 F.2d at 1208, and participation in the after-the-fact review of a grievance is not enough to establish personal involvement, *see, e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (not published) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation). *See also Cole v. Sobina*, Civ. No. 04-99J, 2007 WL 4460617 (W.D. Pa. Dec. 19, 2007); *Ramos v. Pennsylvania Dep't of Corr.*, Civ. No. 06-1444, 2006 WL 2129148 (M.D. Pa. July 27, 2006). *Cf. Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim). Neither does Smith's sending letters to informing prison officials of his complaints establish personal involvement. *See Bullock v. Horn*, Civ. No. 99-1402, 2000 WL 1839171, at *5 (M.D. Pa. Oct. 31, 2000) ("Merely asserting that Plaintiff sent letters to these two defendants will not suffice. Indeed, it would be anomalous to suggest that a prisoner could name as a Defendant any governmental official whatsoever, no matter how far removed in the chain of authority from the actual conduct in question, simply by sending that official a letter.").

As to the bunk assignment issue, there is no evidence of record that Carroll or Burris had any knowledge, whatsoever, of Smith's complaints. Danberg was not contacted until after Smith

filed the complaint when Smith sent him a letter. Smith claims that the defendants had personal involvement, but he failed to produce or point to evidence in the record to support his position.

The record does not support a finding of sufficient personal involvement in the denial of inhumane conditions of confinement. Grievance No. 127544 states that Smith complained in some fashion to the defendants on June 15, 2007. The record provides no further detail and does not indicate if the complaints were verbal or written. The record also reflects that Smith sent copies of the June 25, 2007 grievance No. 131020 to Danberg and Burris, and wrote a letter to Carroll on June 27, 2007. These contacts, however, are insufficient to impute personal involvement to the defendants.

Also, there is nothing in the record to indicate the defendants had any involvement in the maintenance or cleaning of prison cells. *See Biggins v. Danberg*, Civ. No. 09-862-GMS, 2010 WL 2104275, at *7 (D. Del. May 25, 2010). Indeed, the record reflects, and it is undisputed, that there are policies in place that provide for the repair, maintenance and cleaning of the buildings at the VCC. Notably, Pawlowski, not the defendants, is responsible for inspecting the VCC buildings, following by work orders that are submitted to maintenance. Also, an inmate environmental work crew, supervised by individuals other than defendants, is responsible for cleaning the tiers of the buildings at the VCC. Of note is that when Burris received mailings from Smith, she forwarded the complaints to others to take action.

Finally, it seems that the individuals were named as defendants based upon their supervisory positions and, as discussed above, § 1983 liability cannot lie under a theory of respondeat superior. And, while Smith sets forth a litany of complaints regarding the conditions of confinement, for the most part, they fall under the auspices of negligence. Mere negligence

claims do not constitute "deliberate indifference." *See Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 n.2 (3d Cir.2001) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999); *see also Davidson v. Cannon*, 474 U.S. 344, 347 (1986). Indeed, the record does not reflect that the defendants were aware of a risk of a serious injury that could occur and purposefully failed to take appropriate steps.

After reviewing the record, the court finds there is insufficient evidence to enable a jury to reasonably find for Smith on the issue of whether the defendants had any personal involvement in the remaining alleged constitutional violations. Therefore, the court will grant the defendants' motion for summary judgment and will deny Smith's motion for summary judgment.[10]

## V. CONCLUSION

For the above stated reasons the court will grant the defendants' motion for summary judgment and will deny Smith's motion for summary judgment.

An appropriate order will be entered.

_____
CHIEF, UNITED STATES DISTRICT JUDGE

June 15, 2010
Wilmington, Delaware

---

[10]The court will not address the remaining grounds raised by the parties, but notes that grievance responses indicate that Smith did not have available to him administrative remedies. *See Spruill*, 372 F.3d at 227-28; *Nyhuis*, 204 F.3d at 67.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAUL J. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 07-476-GMS |
| | ) |
| CARL C. DANBERG, THOMAS | ) |
| CARROLL, and BETTY BURRIS, | ) |
| | ) |
| Defendants. | ) |

## ORDER

At Wilmington this 15th day of June, 2010, for the reasons set forth in the Memorandum issued this date;

1. The defendants' motion for summary judgment is **granted**. (D. I. 49.)

2. The plaintiff's motion for summary judgment is **denied**. (D.I. 53.)

3. The clerk of court is directed to **enter judgment** in favor of the defendants and against the plaintiff and to **close** the case.

CHIEF, UNITED STATES DISTRICT JUDGE